THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED DIDA, # Y51285, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>KIMBERLY HVARRE, )<br>DR. LARSON, )<br>JANE DOE (Healthcare Administrator), )<br>B. WILSON (Lt., Security Dept.), )<br>SGT. VAN DYKE (Badge #3275), and )<br>LADY SMITH (C/O), )<br>)<br>Defendants. ) | Case No. 3:24-cv-00132-GCS |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Mohamed Dida is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Big Muddy River Correctional Center ("BMRCC"). He filed this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, asserting that he was denied treatment for various medical and dental conditions.[1] Plaintiff seeks injunctive relief to obtain treatment for these conditions. Upon initial merits review, this Court dismissed the Complaint for failure to state a claim upon which relief may be granted and allowed Plaintiff to file an amended complaint. (Doc. 14). The principal flaw in Plaintiff's original Complaint was his failure to identify, or include as defendants, the individuals who knew that he needed medical

---

[1] Plaintiff originally filed his Complaint in the Central District of Illinois, which transferred the matter to this Court on January 19, 2024. (Doc. 2).

Page **1** of **15**

and dental treatment but did not respond to his needs.

Plaintiff's First Amended Complaint (Doc. 15) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims.[2] *See* 28 U.S.C. § 1915A(a). Any portion of the Amended Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Amended Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE FIRST AMENDED COMPLAINT

Plaintiff sought treatment in January 2023 for numbness on the left side of his body. (Doc. 15, p. 7). In May, September, October, and November 2023, Dr. Larson recommended a referral to a nerve expert – however, that referral never occurred. Plaintiff saw a physiotherapist on February 20, 2024, who could not diagnose the cause of Plaintiff's numbness. The numbness is becoming worse, and Plaintiff's fingers and toes are "ice cold." *Id.* at p. 16.

Also in January 2023, Plaintiff's feet were swollen and painful. (Doc. 15, p. 7). On February 7, 2023, and May 15, 2023, x-rays and scans were performed. On October 11, 2023, the condition was so bad that Plaintiff was unable to wear regular shoes and could

---

[2] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 7), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, and the IDOC.

only wear shower shoes. He was sent to a foot expert in October 2023; this provider requested an x-ray, specific physiotherapy, and prescribed medication. Plaintiff was booked for a follow-up visit in two weeks. However, Plaintiff was not sent back to that doctor and never got the T-Band physiotherapy the doctor ordered.

Plaintiff was scheduled to take the medication prescribed by the foot expert at 4:00 a.m. However, Sgt. Van Dyke and C/O Lady Smith (#5809) refused to let Plaintiff go out for his medication even though he had a call pass. (Doc. 15, p. 7-8). Plaintiff discussed the problem with Dr. Larson, who changed the timing of the medication to 3:00 a.m. when movement should have been permitted, but Van Dyke and Smith still would not allow Plaintiff to go out for his medication. On February 9, 2024, Lt. B. Wilson informed Plaintiff that he had ordered Plaintiff's 4:00 a.m. medication and 3:45 a.m. breakfast to be stopped. To date, Plaintiff has not received the prescribed medication.

In November 2021 – before he was arrested – Plaintiff was undergoing dental treatments to repair crowns and perform root canal procedures. (Doc. 15, p. 9). While in county jail, Plaintiff had two teeth pulled. Jail officials refused to provide alternative treatment. After arriving at BMRCC, Plaintiff met with a John Doe dental department staff member and informed them he needed his crowns re-done and needed treatment for his exposed and decayed teeth. This John Doe consulted with two Jane Does[3] and responded that Plaintiff's requested treatment was cosmetic and thus could not be

---

[3]  Plaintiff does not include this John Doe dental department staff or the two Jane Does as defendants herein. (Doc. 15, p. 1-3).

provided. The matter then went to the Defendant Jane Doe Healthcare Administrator, who determined the only dental service Plaintiff could receive was a tooth extraction. The Jane Doe Healthcare Administrator would not refer Plaintiff for treatment using his private insurance. Plaintiff later saw a visiting John Doe Dentist,[4] who confirmed that tooth extraction was the only available treatment for state prisoners. Plaintiff still has exposed teeth that are decaying, holes in his teeth where food collects, and broken crowns that cut and injure him.[5]

On January 29, 2023, and March 21, 2023, Plaintiff asked to see a skin doctor because black spots had appeared on the skin of his ear lobe, neck, and shoulder. His initial requests were ignored. After additional complaints, on October 2, 2023, Plaintiff was referred to an ENT surgeon who performed a biopsy and scheduled him for a two-week follow-up. That return appointment was ignored. On December 6, 2023, the ENT surgeon diagnosed Plaintiff with seborrheic keratosis and recommended he see a dermatologist. However, nothing was done, and Plaintiff continues to have constant itching and irritation.

Plaintiff suffers from spinal pain, and since January 2023, he met several times with Dr. Larson for this problem. (Doc. 15, p. 11). X-rays and scans showed a space in the L5 spine/lower back. Physiotherapy and "spinal expertise" were recommended but these have not occurred. Dr. Larson prescribed Tylenol and ibuprofen for pain, which Plaintiff

---

[4]     Plaintiff does not include the John Doe Dentist as a defendant. (Doc. 15, p. 1-3).

[5]     Exhibits included with Plaintiff's original Complaint indicate that Plaintiff could have had two teeth extracted but declined that treatment. (Doc. 1-1, p. 6-7, 11).

takes, but his spinal pain continues to worsen. (Doc. 15, p. 12).

On July 5, 2023, Plaintiff complained of pain in his eyeball. He saw a visiting optician on August 2, 2023, who administered artificial eye drops and visual field tests out of concern Plaintiff may have cataracts. (Doc. 15, p. 12). That recommendation was ignored until January 26, 2024. Despite the completion of the visual field tests, nothing has been done for Plaintiff's eye pain despite his healthcare request slips and grievances.

Plaintiff was diagnosed with a Vitamin B-12 deficiency on March 17, 2023. (Doc. 15, p. 12). Dr. Larson prescribed a five-day course of B-12 injections, and seven months of B-12 pills. Plaintiff received two types of pills (one hard and one soft) once a month. The hard pills caused Plaintiff to have headaches, so Dr. Larson discontinued them and ordered the soft pills. After four months on the soft pills, Plaintiff was again sent the hard pills. After getting a headache again, Plaintiff sent them back and explained the problem. The Healthcare Administrator sent Plaintiff a "refusal" form to sign. Plaintiff objected that he did not refuse his medication; instead, he had a reaction from the wrong/"fake" pill. (Doc. 15, p. 13).[6] Plaintiff complained to Dr. Larson, who prescribed the original brand with the order "Do not change" the prescription. (Doc. 15, p. 14). However, the Healthcare Administrator failed to follow this order and did not send Plaintiff any B-12 pills for the remaining three months.

On November 13, 2023, Dr. Larson sent Plaintiff to a hematologist after noting that his B-12 level was still low. This doctor (Bassam N. Maalouf of the Centralia Oncology

---

[6] Plaintiff notes a discrepancy on the labels between the old and newer medications, indicating that the pill causing the headache could be fake. (Doc. 15, p. 13).

Clinic) performed blood tests, prescribed more B-12 injections, and ordered a two-week follow-up. However, these orders were ignored by the Jane Doe Healthcare Administrator.

Plaintiff finally went back to Dr. Bassam Maalouf on February 27, 2024. This hematologist diagnosed Plaintiff with pernicious anemia and noted he should have been taking the B-12 injections (1000 mg) before seeing another expert. The hematologist drew more blood and scheduled another two-week visit as well as a recommendation for Plaintiff to see a digestive expert. (Doc. 15, p. 16). Following the February 27, 2024, visit, Plaintiff reported to a prison nurse that he needed to have injections for the next five days. Plaintiff got the second injection on March 1, 2024, after "a lot of struggle." *Id.*

As relief, Plaintiff requests an "immediate call" for dental care and proper medical care.[7] (Doc. 15, p. 17).

## DISCUSSION

Based on the allegations in the First Amended Complaint, the Court modifies the previously designated claims in this *pro se* action as follows:

Count 1: Eighth Amendment deliberate indifference claim against Dr. Larson for the failure to implement his referral of Plaintiff to a nerve expert for numbness on the left side of Plaintiff's body that started in January 2023.

Count 2: Eighth Amendment deliberate indifference claim against Dr. Larson for delaying treatment for Plaintiff's swollen and painful feet between January 2023 and October 2023 and for failing to provide Plaintiff with physiotherapy and

---

[7] Plaintiff does not request money damages. He did not file a motion seeking preliminary injunctive relief.

|  |  |
|---|---|
|  | medication ordered by the foot expert; and against Sgt. Van Dyke, Lady Smith, and B. Wilson for preventing Plaintiff from receiving prescribed medication for his foot condition after October 2023. |
| Count 3: | Eighth Amendment deliberate indifference claim against the Jane Doe Healthcare Administrator for her failure to provide Plaintiff with any dental treatment other than extractions for his broken crowns and exposed, infected, and painful teeth. |
| Count 4: | Eighth Amendment deliberate indifference claim for the delay in treating the itchy and irritating black spots on Plaintiff's skin since January 2023; the failure to send Plaintiff to his October 2023 follow-up appointment with the ENT surgeon; and the failure to send Plaintiff to a dermatologist after December 2023 for his diagnosed seborrheic keratosis. |
| Count 5: | Eighth Amendment deliberate indifference claim against Dr. Larson for the failure to provide Plaintiff with recommended physiotherapy for his spinal pain, failure to send him for expert consultation, and failure to provide effective pain relief since January 2023. |
| Count 6: | Eighth Amendment deliberate indifference claim regarding Plaintiff's eye pain, for delaying recommended tests from August 2023 to January 2024, and failing to provide Plaintiff with treatment. |
| Count 7: | Eighth Amendment deliberate indifference claim against the Jane Doe Healthcare Administrator for failing to provide Plaintiff with medication for his B-12 deficiency as ordered by Dr. Larson in March 2023, failing to provide Plaintiff with the B-12 injections ordered in November 2023 by the hematologist, and delaying Plaintiff's follow-up appointment with the hematologist until February 2024, when he was diagnosed with pernicious anemia. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[8]

## SEVERANCE OF CLAIMS

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); 3A *Moore's Federal Practice* § 20.06, at 2036-45 (2d ed. 1978).

Here, Plaintiff asserts claims against Dr. Larson in Counts 1, 2,[9] and 5 relating to his complaints of numbness, swollen and painful feet, and spinal pain. He raises claims against the Jane Doe Healthcare Administrator for unsatisfactory dental treatment in Count 3 and for failure to provide medication and treatment for his B-12 deficiency in Count 7. The claims in Counts 1, 2, and 5 involving Dr. Larson are distinct from the claims in Counts 3 and 7 against the Jane Doe Healthcare Administrator. The two groups of claims arose from different transactions/occurrences and do not share any common question of law or fact. The Court will therefore exercise its discretion and sever the improperly joined claims in Counts 3 and 7 into a separate lawsuit. *See* FED. R. CIV. PROC.

---

[8] *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

[9] Count 2 also involves three other defendants who are not named in any other claim.

18, 20, and 21. *See also Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (noting that district courts should not allow inmates to combine multiple lawsuits into a single complaint). Plaintiff will be given the opportunity to voluntarily dismiss the severed case if he does not wish to pursue it.

Counts 1, 2, and 5 involving Dr. Larson will remain in this action, along with Counts 4 and 6, which are not associated with any Defendant.

**Count 1**

Prison medical providers violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical or dental needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Deliberate indifference is demonstrated where a prison official acted or failed to act despite his/her knowledge of a serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

Plaintiff alleges that Dr. Larson knew about Plaintiff's numbness on the left side of his body for months. Dr. Larson recommended Plaintiff be referred to a nerve expert, but this never took place. To the extent that Dr. Larson failed to follow up to make sure Plaintiff saw the outside expert, that failure may amount to deliberate indifference. Count

1 may therefore proceed against Dr. Larson.

## Count 2

Similarly, Dr. Larson was allegedly aware of Plaintiff's complaints of swollen, painful feet since January 2023. Plaintiff underwent x-rays and scans, but no further steps were apparently taken until his condition worsened to the point Plaintiff could not wear regular shoes on October 11, 2023. That delay in treatment could be attributed to Dr. Larson, so this portion of Count 2 may proceed against him.

Plaintiff was taken to an outside foot expert in October 2023 but was not given the prescribed physiotherapy or taken to the follow-up visit. Plaintiff does not specify whether Dr. Larson or another person was responsible for those omissions, therefore this portion of Count 2 is dismissed without prejudice.

The outside foot specialist prescribed Plaintiff medication and Dr. Larson adjusted the timing of the medication when Plaintiff was not allowed to receive it at 4:00 a.m. Ultimately, however, Plaintiff did not get the prescribed medication. Plaintiff does not say whether he requested further assistance from Dr. Larson, thus there are no allegations to support holding Dr. Larson liable for withholding the foot medication. This portion of Count 2 is also dismissed without prejudice.

Defendants Van Dyke, Lady Smith, and B. Wilson allegedly refused to allow Plaintiff to go out to get his foot medication even though he was authorized to receive the prescription. While these Defendants are not medical providers, their alleged refusal to permit Plaintiff to access prescribed medication may amount to deliberate indifference. *See, e.g., Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) (noting that prison official's

refusal to follow the advice of a medical specialist for a non-medical reason may constitute deliberate indifference). This portion of Count 2 may proceed against Van Dyke, Lady Smith, and B. Wilson.

### Count 4

This claim for delay in obtaining a referral and follow-up treatment for Plaintiff's seborrheic keratosis may amount to a constitutional violation – but Plaintiff fails to identify any individual who was allegedly responsible for the delay in referring him to the ENT surgeon, or for the failure to send him to a dermatologist. A plaintiff is required to associate specific defendants with specific claims so defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). For this reason, Count 4 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 5

As with the allegations in Counts 1 and 2, Plaintiff claims Dr. Larson was aware of Plaintiff's spinal pain starting in January 2023. Plaintiff underwent some testing and Dr. Larson prescribed over-the-counter medications for the pain. However, Dr. Larson allegedly failed to ensure that Plaintiff received the recommended physiotherapy or a referral to a provider with "spinal expertise," and Plaintiff's pain has not been relieved by the medications Dr. Larson provided. Chronic and substantial pain can constitute a serious medical condition, which may support a deliberate indifference claim. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Count 5 may proceed against Dr. Larson.

## Count 6

Plaintiff fails to identify any individual who was allegedly responsible for the delays and failure to treat his eye pain. Accordingly, Count 6 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### INJUNCTIVE RELIEF

Because the First Amended Complaint includes a request for injunctive relief, Kimberly Hvarre, the Warden of BMRCC, in her official capacity only, will remain as a Defendant regarding the request for injunctive relief. *See, e.g.*, *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as they would be responsible for ensuring that any injunctive relief would be carried out). Notably, Plaintiff does not claim that Hvarre was directly, personally involved in any of the acts or omissions underlying his claims of deliberate indifference to his medical conditions, and Hvarre cannot be held liable in a civil rights suit under § 1983 merely because she supervised the defendants who allegedly violated Plaintiff's rights. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Accordingly, all claims against Hvarre in her individual capacity are dismissed.

### DISPOSITION

For the reasons stated above, Counts 3 and 7 against the Jane Doe Healthcare Administrator are **SEVERED** into a new case. Because Plaintiff requests injunctive relief in connection with Counts 3 and 7, Warden Kimberly Hvarre, in her official capacity, should be included as a Defendant in the new severed case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;

- The First Amended Complaint (Doc. 15);

- Plaintiff's motion to proceed IFP (Doc. 5) and his Prisoner Trust Fund Account Statement (Doc. 10).

In the new case, Plaintiff shall have the option to proceed on Counts 3 and 7 or to dismiss the case without prejudice before he is required to pay a fee.

The only claims remaining in this case are Counts 1, 2, 4, 5, and 6. Counts 3 and 7 and the Jane Doe Healthcare Administrator are **DISMISSED** from *this* case with prejudice.

**IT IS HEREBY ORDERED** that Count 1 against Dr. Larson; Count 2 (as limited above) against Dr. Larson, Van Dyke, Lady Smith, and B. Wilson; and Count 5 against Dr. Larson survive initial screening as described above. Counts 4 and 6 are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk shall prepare for Warden Kimberly Hvarre (official capacity only), Dr. Larson, B. Wilson, Sgt. Van Dyke, and Lady Smith: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 15), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized

by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  May 29, 2024.**

Digitally signed by Judge Sison
Date: 2024.05.29 15:11:45 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.